HOPEWELL MILLS vs. TAUNTON SAVINGS BANK & others.

Suffolk.    November 15, 1889. — January 3, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Mortgage of Real Estate — Fixtures — Cotton Machinery — Trover.*

On the issue whether certain machinery in a cotton mill was, as between mortgagor and mortgagee, a part of the realty, an agreed statement of facts showed that the machines, most of which were large and heavy, were all procured for use in manufacturing cotton cloth; that while there were changes in the kinds of goods manufactured, the machines were not intended to be moved from place to place, but were intended to be put in position and there used with the building until they should be worn out, or until, from some unforeseen cause, the real estate should be put to a different use; that most of them were fastened to the floor for the purpose, among others, of steadying them when in use; that apparently they had been attached to the building and connected with the motive power with a view to permanence; and that certain loom beams, which were laid upon the looms when in use, although not fastened thereto, were essential parts of the looms. *Held,* that it could not be said that the machines, including the loom beams, were personal property, for the conversion of which trover would lie.

TORT for the conversion of certain cotton machinery. The case was submitted to the Superior Court, and, after judgment for the defendant, to this court, on appeal on agreed facts, in substance as follows.

On December 16, 1884, the plaintiff corporation became the owner of an estate, consisting of land with a cotton mill and other buildings thereon and of an adjacent water privilege, by which together with steam power the mill was run. This estate was conveyed to the plaintiff, subject to a mortgage made in 1876 by the plaintiff's predecessor in title to the first named defendant, which included the mill " with all machinery, tools, and fixtures and furniture therewith appertaining." The mill, when this mortgage was given and for some time thereafter, was used only in making white or uncolored cotton goods. Subsequently the machinery in question was purchased by the plaintiff and by one of its predecessors in title, and placed either in the mill or in additions erected thereto, and consisted of a ring frame, mules, looms and loom beams, a skein winder, reel, cop spooler, dresser, four dobby-heads, a picker head or beater, and a cloth brush and

shear.   All this machinery was put into the mill, either for the better manufacture of the kind of cotton goods hitherto made there, or for making new varieties of cotton goods, both colored and uncolored ; and all of it, with the exception of the brush and shear, which replaced another brush then laid aside as ineffective, was additional to that already in the mill.   The machines, with the exception of the dobby-heads and loom beams, were large and heavy, varying in weight from three hundred to two thousand pounds, and, with the exception of the picker head, were screwed down to the floors of the rooms in which they were situated, in order to steady them when in use ; but this was not the only purpose for which they were so fastened.   The machines were connected by pulleys, belts, and shafting with the power operating the mill.   None of them was specially built for use in this particular mill, and all could equally well be used for the same purposes in any other cotton mill with the ordinary room to hold it and power to operate it.   The new looms, reel, cop spooler, skein winder, dresser, and dobby-heads, which last were attached to four of the old looms in the mill, were all put in for the making of new kinds of cotton cloth, but were equally well adapted for that hitherto manufactured in the mill.   The reel and skein winder were necessary for winding the colored yarn for the new colored goods, and the cop spooler was put in to wind the yarn spun by the new mules.   The dresser was heated by a system of steam pipes within it, connected with the main boiler of the mill.   The loom beams, each of which formed an essential part of a loom, were purchased and placed in the mill to facilitate the weaving of the new kinds of goods, both plain and colored.   They were used for holding warp, and were laid upon the looms, being in no way fastened to them, and were steadied by a rope with a weight attached.   The picker head or beater was attached to the picker then in the mill, which up to that time had had but one beater, and served to render the machine more effective.   The mill and additions could be as beneficially used in the manufacture of other textile fabrics, in the sense that any cotton mill could be so used.   All of the machines could be taken out of the mill without injury to themselves, or to the realty, except to a very slight extent by leaving screw holes in the floor.

The plaintiff, after all the above machinery had been purchased and placed in the mill, operated it until October 1, 1887, and then ran out the stock and closed.the mill, and ceased to pay interest on the mortgage. Thereafter the first named defendant duly foreclosed the mortgage for breach of condition by a sale of the entire estate, and subsequently, on July 10, 1888, conveyed it to the other defendants, Cyrus G. Beebe and Frederick Beebe, the deed to them including the " machinery, tools, and furniture thereto appertaining and belonging." The Beebes entered into possession, the machinery in question being at the time still affixed to the mill as above stated, and not since detached, and at once began to operate the mill as a cotton mill, using all the machinery, and refused to give it up or to allow the plaintiff to take it, although due demand was made on them therefor.

If upon these facts the plaintiff could recover, judgment was to be entered in its favor; otherwise, judgment was to be for the defendants.

*T. L. Livermore & W. K. Richardson*, for the plaintiff.

*A. M. Alger*, for the defendants.

KNOWLTON, J. This case is submitted on an agreed statement of facts; and, since the burden of proof is on the plaintiff, there must be judgment for the defendants unless the facts stated establish the plaintiff's title.

There is some conflict of authority, in different jurisdictions, in regard to the question when machines placed in a building become fixtures which pass with a conveyance of the real estate. In this Commonwealth the general principles applicable to such cases have often been considered, and are well established; but there is frequently difficulty in the application of them to particular cases.

The character of the property, as real or personal, may be fixed by contract with the owner of the real estate when the article is put in position ; but such a contract cannot affect the rights of a mortgagee, or of an innocent purchaser without notice of it. *Hunt* v. *Bay State Iron Co.* 97 Mass. 279. *Thompson* v. *Vinton*, 121 Mass. 139. *Southbridge Savings Bank* v. *Exeter Machine Works*, 127 Mass. 542, 545. *Case Manuf. Co.* v. *Garven*, 45 Ohio St. 289. Except in cases where a contract determines the question, a machine placed in a build-

ing is found to be real estate or personal property from the external indications which show whether or not it belongs to the building as an article designed to become a part of it, and to be used with it to promote the object for which it was erected, or to which it has been adapted and devoted, — an article intended not to be taken out or used elsewhere, unless by reason of some unexpected change in the use of the building itself. The tendency of the modern cases is to make this a question of what was the intention with which the machine was put in place. *Turner* v. *Wentworth,* 119 Mass. 459. *Southbridge Savings Bank* v. *Exeter Machine Works,* 127 Mass. 542, 545. *Allen* v. *Mooney,* 130 Mass. 155. *Smith Paper Co.* v. *Servin,* 130 Mass. 511, 513. *Hubbell* v. *East Cambridge Bank,* 132 Mass. 447. *Maguire* v. *Park,* 140 Mass. 21. *McRea* v. *Central National Bank,* 66 N. Y. 489. *Hill* v. *National Bank,* 97 U. S. 450. *Ottumwa Woolen Mill* v. *Hawley,* 44 Iowa, 57. These cases seem to recognize the true principle on which the decisions should rest, only it should be noted that the intention to be sought is not the undisclosed purpose of the actor, but the intention implied and manifested by his act. It is an intention which settles, not merely his own rights, but the rights of others who have or who may acquire interests in the property. They cannot know his secret purpose; and their rights depend, not upon that, but upon the inferences to be drawn from what is external and visible. In cases of this kind every fact and circumstance should be considered which tends to show what intention, in reference to the relation of the machine to the real estate, is properly imputable to him who put it in position.

Whether such an article belongs to the real estate is primarily and usually a question of mixed law and fact. *Turner* v. *Wentworth,* 119 Mass. 459. *Allen* v. *Mooney,* 130 Mass. 155. *Maguire* v. *Park,* 140 Mass. 21. *Carpenter* v. *Walker,* 140 Mass. 416. *Southbridge Savings Bank* v. *Mason,* 147 Mass. 500. But the principal facts, when stated, are often such as will permit no other presumption than one of law. It is obvious that in most cases there is no single criterion by which we can decide the question. The nature of the article, and the object, the effect, and the mode of its annexation, are all to be considered. In this Commonwealth it has been said that " whatever is placed in a

building subject to a mortgage, by a mortgagor or those claiming under him, to carry out the purpose for which it was erected, and permanently to increase its value for occupation or use, although it may be removed without injury to itself or the building, becomes part of the realty." *Southbridge Savings Bank* v. *Mason*, 147 Mass. 500. *Pierce* v. *George*, 108 Mass. 78. This rule generally prevails also in other jurisdictions. *Parsons* v. *Copeland*, 38 Maine, 537. *Holland* v. *Hodgson*, L. R. 7 C. P. 328. *Longbottom* v. *Berry*, L. R. 5 Q. B. 123. *McRea* v. *Central National Bank*, 66 N. Y. 489. *Hill* v. *National Bank*, 97 U. S. 450. *Harlan* v. *Harlan*, 15 Penn. St. 507. *Delaware, Lackawanna, & Western Railroad* v. *Oxford Iron Co.* 9 Stew. 452. *Roddy* v. *Brick*, 15 Stew. 218, 225. *Ottumwa Woolen Mill* v. *Hawley*, 44 Iowa, 57.

We are of opinion that this rule is applicable to the case at bar. The building mortgaged was a cotton mill; and the machinery in controversy was all procured for use in manufacturing cotton cloth. Most of it was heavy; and there is much to indicate that, while there were changes in the kinds of goods manufactured, the machines were not of a kind intended to be moved from place to place, but to be put in position, and there used with the building until they should be worn out, or until, for some unforeseen cause, the real estate should be changed and put to a different use. Of most of them it is said in the agreed statement that they were fastened to the floor for the purpose of steadying them when in use; but it is also said that this is not a statement of the only purpose for which they were fastened. They seem to have been attached to the building, and connected with the motive power, with a view to permanence. The loom beams are essential parts of the looms; and although they are not fastened to the looms, but are laid upon them when in use, they are no less real estate than those parts of the looms which are annexed to the realty. No suggestion is made in regard to any other part of the property, which calls for a distinction between different articles.

We are of opinion that the agreed facts do not show that the machinery was personal property, for which trover can be maintained; and the entry must be,

*Judgment for the defendants.*